UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CHARLES LOUIS GUAY, | Case No. EDCV 13-01592-DFM |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| CAROLYN COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Charles Guay ("Plaintiff") appeals the Commissioner's final decision denying his application for Supplemental Security Income ("SSI") benefits. For the reasons discussed below, the Commissioner's decision is affirmed and the matter is dismissed with prejudice.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed an application for SSI benefits alleging disability beginning March 8, 2010. The ALJ found that Plaintiff had the severe impairments of human immunodeficiency virus ("HIV"), hepatitis B, hepatitis C, major depressive disorder, personality disorder, and history of significant drug and alcohol dependency. Administrative Record ("AR") 19. The ALJ concluded,

however, that Plaintiff was not disabled because he could perform work available in significant numbers in the national and regional economy. AR 29.

## II.

## ISSUES PRESENTED

The parties dispute whether the ALJ erred in: (1) evaluating the medical opinion evidence; (2) determining that Plaintiff's impairments did not meet or equal a listing; (3) considering the testimony of the vocational expert ("VE"); and (4) assessing Plaintiff's credibility. See Joint Stipulation ("JS") at 2-3.

## III.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

///

## IV.

## DISCUSSION

**A.** **The ALJ Properly Considered the Opinions of the Treating and Examining Physicians**

Plaintiff contends that the ALJ erred in failing to give controlling weight to the opinion of Plaintiff's treating physician, Dr. Kurt Frauenpreis. JS at 3-4. Plaintiff likewise contends that the ALJ erred in not fully crediting the opinion of the consultative examining physician, Dr. Oluwafemi Adeyemo. Id. The Court will address each issue in turn.

### 1.     Applicable Law

Three types of physicians may offer opinions in Social Security cases: those who directly treated the plaintiff, those who examined but did not treat the plaintiff, and those who did not treat or examine the plaintiff. See 20 C.F.R. § 416.927(c)(2); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). A treating physician's opinion is generally entitled to more weight than that of an examining physician, which is generally entitled to more weight than that of a non-examining physician. Lester, 81 F.3d at 830. Thus, the ALJ must give specific and legitimate reasons for rejecting a treating physician's opinion in favor of a non-treating physician's contradictory opinion or an examining physician's opinion in favor of a non-examining physician's opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Lester, 81 F.3d at 830-31. However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

### 2.     Treating Physician

Dr. Frauenpreis completed three evaluations in which he provided opinions about Plaintiff's limitations. In a hepatitis-C questionnaire,

Dr. Frauenpreis opined that Plaintiff experienced a variety of symptoms ranging from chronic fatigue to urinary incontinence due to his impairments; that his mental impairments "constantly" affected his ability to pay attention and concentrate; that he was incapable of even "low stress jobs"; that he would miss more than four days per month of work due to his impairments; and that he could walk less than a block, could not sit or stand for any length of time, and could not lift more than one pound. AR 543-47. In a statement regarding Plaintiff's HIV, Dr. Frauenpreis opined that Plaintiff was unable to work; that he could only stand and sit for 15 minutes at a time; that he could not lift any weight; and that his ability to understand, remember, and carry out simple or detailed instructions as well as his ability to maintain attention and concentration were extremely impaired. AR 556-59. In a mental-impairment questionnaire, Dr. Frauenpreis opined that Plaintiff suffered from serious work-related limitations and extreme limitations in daily living, social functioning, and maintain concentration, persistence, or pace. AR 550-52. Dr. Frauenpreis reported that Plaintiff had experienced four or more episodes of decompensation of at least two weeks duration within a 12-month period. AR 552.

The ALJ provided specific and legitimate reasons, each of which is supported by substantial evidence in the record, for rejecting Dr. Frauenpreis's opinions. First, the ALJ noted that the doctor's opinion was "quite conclusory, providing very little explanation of the evidence relied on in forming that opinion." AR 26. Nor do the limited records from Plaintiff's visits to Dr. Frauenpreis provide further basis for the doctor's dire assessment. See AR 539-42; see also AR 524-28, 531-38 (reporting unremarkable results from tests ordered by Dr. Frauenpreis). The ALJ may take into account whether the treating physician's opinion is conclusory and inadequately supported by clinical findings in determining the weight to give that opinion. See Thomas,

4

278 F.3d at 957; see also Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (holding that ALJ permissibly rejected "check-off reports that did not contain any explanation of the bases of their conclusions").

The ALJ also observed that Dr. Frauenpreis's opinions were at times internally inconsistent. AR 26. As the ALJ noted, Dr. Frauenpreis concluded in one report that Plaintiff could not sit or stand at all, but opined in a second report on the same date that Plaintiff could sit and stand for 15 minutes at a time. Id. Such a discrepancy is a legally valid reason for discounting a doctor's opinion. See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (finding discrepancy between treatment notes and doctor's opinion "a clear and convincing reason for not relying on the doctor's opinion"); Matney ex rel Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992) (holding that "inconsistencies and ambiguities" in doctor's opinion were specific and legitimate reason for rejecting it).

The ALJ also found Dr. Frauenpreis's opinion to be "exaggerated" and inconsistent with the medical record as a whole. AR 26. The ALJ noted that, contrary to Dr. Frauenpreis's opinion that Plaintiff had such debilitating physical and mental symptoms that he was completely unable to work, the physical examinations and other medical evidence of record were largely unremarkable. AR 23, 27. Some of the medical records even demonstrated that Plaintiff's impairments were stable and/or improving with treatment. See AR 23, 27, 300, 318, 362, 446-49, 495-96, 526, 531-34. The ALJ further noted that although Dr. Frauenpreis stated that Plaintiff had four or more extended episodes of decompensation, there was no evidence of episodes of decompensation in the record. AR 26-27. Thus, the ALJ legitimately rejected Dr. Frauenpreis's opinion as exaggerated and unsupported by the medical evidence. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (holding that ALJ properly rejected treating physician's opinion where some of

5

physician's "recommendations were so extreme as to be implausible and were not supported by any findings made by any doctor"); 20 C.F.R. § 416.929(c)(iv)-(v) (ALJ may consider effectiveness of medication and treatment in evaluating severity and limiting effects of impairments).

Finally, the ALJ noted that Plaintiff's activities of daily living were inconsistent with the extreme functional limitations found by Dr. Frauenpreis. AR 26-27. Although Dr. Frauenpreis opined that Plaintiff could not sit or stand at all, Plaintiff "admitted in his Adult Function Report that he was able to take public transportation and drive, both of which require sitting or standing for a certain length of time." AR 26 (citing AR 247-50). Such inconsistencies are a valid basis for discounting a doctor's opinion. See Rollins, 261 F.3d at 856 (noting that treating physician's claim that Plaintiff could not perform "any bending, stooping, crouching, crawling, kneeling, climbing, [or] balancing" was undermined by the claimant's own statements and activities of daily living).

### 3.    Examining Physician

Dr. Adeyemo, the consultative psychiatric examiner, opined that Plaintiff could not perform simple, repetitive tasks consistently due to his inability to concentrate; that he would have difficulty responding appropriately to co-workers, supervisors, and the public due to "extensive paranoia"; and that he would have difficulty dealing with changes in a routine work setting. AR 442.

The ALJ gave less weight to Dr. Adeyemo's opinion because "the longitudinal medical evidence [did] not support her restrictive opinion, which was based on a one-time examination of" Plaintiff. AR 27. For instance, the ALJ pointed to mental-health assessments in September and December 2010 that were largely unremarkable, AR 24-25; see AR 326-28, 503, and noted that the record contained no evidence of mental-health treatment before or after

6

2010, AR 26. The ALJ also noted that Dr. Adeyemo's findings of extreme mental limitations were contradicted by the opinions of the state-agency psychiatric consultants, who concluded that Plaintiff was only moderately limited in his ability to understand detailed instructions, to maintain concentration for extended periods, to complete a normal workday, to interact appropriately with other people, and to respond appropriately to changes in the workplace. AR 27 (citing AR 466-68, 507-08). In fact, one of the reviewing State Agency psychiatrists specifically noted that Dr. Adeyemo's opinion was "to[o] restrictive" based on the medical evidence. AR 468. Thus, the ALJ did not, as Plaintiff contends, JS at 4, substitute her own judgment for that of Dr. Adeyemo; rather, the ALJ appropriately gave little weight to the doctor's opinion that Plaintiff could not perform even simple, repetitive work because it was not supported by the medical record. See Tonapetyan, 242 F.3d at 1149 (holding that ALJ properly rejected examining physician's opinion "for lack of objective support"); Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227-28 (9th Cir. 2009) (upholding reliance on state-agency physician's opinion over unsupported opinion of treating physician).

The ALJ also observed that Dr. Adeyemo's finding of extreme mental limitations was undermined by Plaintiff's activities of daily living, which included the ability to care for himself, his family and a pet, prepare meals, perform household chores, use public transportation, drive, shop, manage his finances, and engage in hobbies. AR 25, 27, 247-50. See Rollins, 261 F.3d at 856 (ALJ correctly rejected physician's physical restrictions which were "inconsistent with the level of activity" of the claimant).

In sum, the Court finds that the ALJ properly weighed the opinions of the treating and examining physicians. Reversal on this basis is not warranted.

**B.**   **The ALJ Properly Determined That Plaintiff Did Not Meet or Equal Listings 5.05, 12.04, and 14.08**

Plaintiff argues that the ALJ erred in concluding that Plaintiff's impairments did not meet or medically equal various listings. JS at 12-13. At the administrative hearing, Plaintiff's counsel argued that he met or equaled Listings 5.05 (chronic liver disease), 12.04 (affective disorder), and 14.08 (HIV infection). AR 39-40. The ALJ ultimately determined that Plaintiff's impairments did not meet or medically equal any of these listings. AR 19-20.

**1.**   **Applicable Law**

At step three of the sequential evaluation process, an ALJ considers whether an applicant has an impairment or combination of impairments that meets or medically equals an impairment included in the regulations' listing of disabling impairments. Listed impairments are those that are "so severe that they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." Lester, 81 F.3d at 828. Thus, if the claimant's impairment matches or is "equal" to one of the listed impairments, he qualifies for benefits without further inquiry. 20 C.F.R. § 416.920(d); Sullivan v. Zebley, 493 U.S. 521, 525 (1990).

The claimant bears the burden of proving that he has an impairment that meets or equals a listed impairment. Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005); Zebley, 493 U.S. at 530 (noting burden of proof rests with claimant to provide and identify medical signs and laboratory findings that support all criteria for Step 3 impairment determination). "To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). "To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment." Id. (quoting 20

8

C.F.R. § 404.1526). "A generalized assertion of functional problems is not enough to establish disability at step three." Id. at 1100; see 20 C.F.R. § 416.926.

An ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001). The ALJ need not, however, "state why a claimant failed to satisfy every different section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding that ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not satisfy Listing). An ALJ's decision that a plaintiff did not meet a Listing must be upheld if it was supported by "substantial evidence." See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).

### 2.    Analysis

Plaintiff has not met his burden of proving that his physical impairments meet or equal the criteria of Listing 5.05 or 14.08. Although Plaintiff has been diagnosed with hepatitis C and HIV, mere diagnosis of a listed impairment is not sufficient to sustain a finding of disability. See 20 C.F.R. § 416.925(d); Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985); Young v. Sullivan, 911 F.2d 180, 181 (9th Cir. 1990).

Moreover, it is not sufficient for Plaintiff to make the conclusory statement that his hepatitis C and HIV meet listings with a handful of cites to medical records (see JS at 12-13); rather he must demonstrate how these medical reports establish the requirements of Listing 5.05 or 14.08. See Lewis, 236 F.3d at 514. The medical records upon which Plaintiff does rely are the reports authored by Dr. Frauenpreis. See JS at 13; AR 39. Not only are those inadequate to establish the requirements of Listings 5.05 and 14.08, they were properly discounted by the ALJ for the reasons discussed above. Plaintiff has

not met his burden of demonstrating that he meets or equals the criteria of Listing 5.05 or 14.08.

Furthermore, the ALJ properly determined that Plaintiff's mental impairments, considered singly and in combination, did not meet or equal the criteria of Listing 12.04. AR 20-21. Although Plaintiff contends that he has a listing-level mental impairment, he fails to specifically demonstrate how he meets the listing criteria. In order to meet Listing 12.04, a claimant must not only provide medically documented findings of specified signs and symptoms but must also satisfy the criteria in either Paragraph B or Paragraph C of the Listing. See 20 C.F.R., subpt. P, app. 1 § 12.04. Paragraph B requires that Plaintiff's symptoms result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. Id. § 12.04(B).[1] Although Plaintiff contends that the ALJ failed to properly assess the Paragraph B criteria according to the special technique set forth in 20 C.F.R. § 416.920a, the ALJ made specific findings in each of the four functional areas. See AR 21. Because the ALJ found that Plaintiff had only "moderate" limitations with respect to daily activities, social functioning, and maintaining concentration, persistence or pace, and that there was no evidence of episodes of decompensation, she properly found that he

---

[1] The term "repeated episodes of decompensation, each of extended duration," means "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." 20 C.F.R. 404, subpt. P, app. 1 § 12.00(C)(4). If a claimant has "experienced more frequent episodes of shorter duration or less frequent episodes of longer duration," the ALJ "must use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence." Id.

10

1  failed to satisfy the Paragraph B criteria. AR 21; <u>see</u> 20 C.F.R. §

2  916.920a(b)(2), (c), (e)(2).

3    Plaintiff's contention that the ALJ failed to cite to any medical evidence

4  is incorrect; the ALJ detailed her consideration of the record evidence,

5  including records documenting Plaintiff's suicidal ideation and hallucinations.

6  <u>See</u> AR 24. Plaintiff's single visit to the emergency room because of suicidal

7  ideation, <u>see</u> AR 326, was not sufficient to show that Plaintiff had repeated,

8  extended episodes of decompensation. To the extent that Plaintiff contends

9  that Dr. Adeyemo's assessment established a listing-level affective disorder, <u>see</u>

10  JS at 12-13, as discussed above, the ALJ properly gave little weight to

11  Dr. Adeyemo's opinion because it was contrary to the other evidence in the

12  record.

13    Nor did Plaintiff proffer evidence to satisfy the Paragraph C criteria.

14  Paragraph C requires medical evidence of a chronic affective disorder lasting at

15  least two years and one of the following: (1) repeated episodes of

16  decompensation, each of extended duration; (2) a prediction that a minimal

17  change in the claimant's environment would cause him to decompensate; or

18  (3) a current history of at least one year's inability to function outside a highly

19  supportive living arrangement, with an indication of continued need for such

20  an arrangement. 20 C.F.R. § 404, subpt. P, app. 1 § 12.04(C). Plaintiff claims

21  that his repeated incarceration established that he had difficulty functioning

22  outside of a highly structured environment. JS 13 (citing 20 C.F.R. § 404,

23  subpt. P, app. 1 § 12.00(E)); <u>see also</u> <u>id.</u> § 12.04(C)(3). Because the record

24  established that Plaintiff sought mental-health treatment only in 2010 (AR 26),

25  however, he failed to establish a "[m]edically documented history of a chronic

26  affective disorder of at least 2 years' duration," as required by Paragraph C. 20

27  C.F.R. § 404, subpt. P, app. 1 § 12.04(C).

28  <i>///</i>

Moreover, even if he had done so, Plaintiff did not establish an inability to function outside of a highly supportive environment. For instance, in <u>Kittleson v. Astrue</u>, 533 F. Supp. 2d 1100, 1114 (D. Or. 2009), cited by Plaintiff (JS at 20), the claimant provided evidence of three incidents in which his mental-health symptoms "increased markedly" upon his departure from a VA domiciliary. Plaintiff has submitted no such evidence; rather, the ALJ found, based on Plaintiff's activities of daily living, that he was able to independently and appropriately care for himself, even outside a structured environment. AR 21 (noting Plaintiff able to prepare meals, perform household chores, shop for groceries, travel by public transit or car, spend time with family, watch television, surf internet, and read); <u>see also</u> AR 25-27. And, contrary to Plaintiff's contention, JS at 15, the ALJ specifically found that Plaintiff's daily activities included physical, mental, and social interactions necessary for employment. AR 25; <u>see Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999) (finding claimant's ability to fix meals, do laundry, do yardwork, and occasionally care for friend's child evidence of ability to work).

Plaintiff also argues that the ALJ erred by not calling a medical expert to testify at the administrative hearing before making a determination of disability because there was evidence in the record to support equivalency of a listed impairment. However, the record contains the expert medical opinions of two state-agency physicians. <u>See</u> AR 77-84, AR 508-09; SSR 96-6P, at *1 (July 2, 1996) (findings of state-agency medical consultants to be treated as expert opinion evidence).  Their signed Disability Determination and Transmittal Forms (<u>see</u> AR 77, 81) satisfy the requirement that the ALJ receive expert opinion evidence before deciding a claim of disability based on medical equivalence. SSR 96-7P, 1996 WL 374180, at *3 (July 2, 1996); <u>Castaneda v. Astrue</u>, 344 F. App'x 396, 398 (9th Cir. 2009) ("[W]hen the ALJ determines

that an individual's impairment is not equivalent to any listing, the ALJ may satisfy the duty to receive expert opinion evidence into the record by obtaining the signature of a state medical consultant on the appropriate form (Disability Determination and Transmittal Form, SSA–831–U5).").

Accordingly, the ALJ properly determined that Plaintiff's impairments did not meet or medically equal a listing. Plaintiff is therefore not entitled to relief on this claim of error.

**C.    The ALJ Properly Considered the VE's Testimony**

Plaintiff contends that the ALJ erred by not including in the hypothetical question to the VE various mental limitations found by Drs. Frauenpreis and Adeyemo. JS at 16-17. The ALJ posed the following hypothetical question to the VE:

> Okay, I'd like to assume a younger individual with a seventh-grade education and similar to past relevant work, to the claimant's past relevant work. And this individual's restricted to light work with frequent postural, except only occasional climbing, rope, slides or scaffolds, working at heights or around moving machinery, restricted to simple routine repetitive tasks, non-public, occasional interaction with co-workers or supervisors meaning that he would be in the same vicinity, but limited direct contact, no high stress, no fast-paced production or assembly-line work. Would such an individual be able to perform the job that the Claimant has done in the past?

AR 56. In response, the VE testified that Plaintiff could not perform his past relevant work but that there were other jobs available in the national economy which Plaintiff could perform. AR 56-57.

Plaintiff's counsel then posed the following hypothetical question to the VE:

13

Q: Yes, if we added to hypothetical no. 1, that the hypothetical Claimant, in addition to those limitations would have difficulty sustaining concentration for periods lasting longer than one hour, would that erode the numbers in any way that you provided?

A: I guess the, the term I'm having trouble with is, is difficulty. They might have trouble, but they might be able to push their way through it, or they would be unable to push their way through it.

Q: Basically, at the end of every hour, the individual would be able to take an additional break for 15 minutes before going back and engaging in work for an additional hour. So basically the, the hypothetical Claimant would require additional breaks during the workday in excess of the one hour and traditional fifteen minutes, maybe up to an additional 30 minutes during the workday.

A: That would erode the labor market completely.

AR 58-59.

An ALJ must propound a hypothetical to a VE that is based on medical assumptions supported by substantial evidence in the record that reflects all the claimant's limitations. See Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." Id. (citing Tackett, 180 F.3d at 1101). It is, however, proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record. Magallanes v. Bowen, 881 F.2d 747, 756-57 (9th Cir. 1989).

Plaintiff contends that the ALJ should have found that Plaintiff was disabled based upon the VE's answer to the hypothetical question posed by Plaintiff's counsel because this hypothetical question was supported by the opinions of Drs. Frauenpreis and Adeyemo regarding Plaintiff's difficulty in maintaining concentration due to mental impairments and medication side

14

effects. JS at 16. However, an ALJ "is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel" unless those restrictions are supported by substantial evidence in the record. Magallanes, 881 F.2d at 756; Osenbrock, 240 F.3d at 1164. Here, because the ALJ properly gave little weight to the opinions of Drs. Frauenpreis and Adeyemo for the reasons discussed above, the ALJ was not required to include in the hypothetical to the VE any of the mental limitations found by Drs. Frauenpreis and Adeyemo. Osenbrock, 240 F.3d at 1164.[2]

Accordingly, Plaintiff is not entitled to relief on a claim that the ALJ erred in assessing the VE's testimony.

**D.   The ALJ Properly Assessed Plaintiff's Credibility**

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for discounting his subjective symptom testimony. JS at 18-20. Plaintiff testified at the administrative hearing to the following symptoms and limitations: he feels depressed and dehumanized; he is often fatigued; he suffers from severe diarrhea; he was lost over 40 pounds in the past year; and he feels dizzy and disoriented. AR 45, 51-52. In a written questionnaire, Plaintiff also reported difficulty sleeping due to sweats, chills, and discomfort and that he often had to take naps due to fatigue. AR 225-26.

To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. Vasquez v.

---

[2] To the extent Plaintiff contends that the VE should have accounted for Plaintiff's status as a felon in identifying potential jobs, JS 17-18, the VE testified that a felon would not be precluded from completing any of the tasks required of the identified jobs. AR 57; cf. Dye v. Astrue, No. 09-1500, 2010 WL 3489643, at *3 n.2 (W.D. Wash. Aug. 12, 2010) (finding felony status "vocationally relevant" because of "restrictions imposed by state and federal law on some work positions") report and recommendation adopted, No. 09-1500, 2010 WL 3447744 (W.D. Wash. Aug. 31, 2010).

*Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter*, 504 F.3d at 1035-36). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the alleged pain or other symptoms. *Lingenfelter*, 504 F.3d at 1036. "[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). To the extent that an individual's claims of functional limitations and restrictions due to alleged pain are reasonably consistent with the objective medical evidence and other evidence, the claimant's allegations will be credited. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) (explaining 20 C.F.R. § 416.929(c)(4)).

If the claimant meets the first step and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discrediting a claimant's complaints. *Robbins*, 466 F.3d at 883. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick*, 157 F.3d at 722 (quoting *Lester*, 81 F.3d at 834). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 & n.8 (9th Cir. 1996). The ALJ may also consider an unexplained failure to seek treatment or follow a prescribed course of treatment and employ other ordinary techniques of credibility evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

The ALJ gave specific reasons for finding that Plaintiff's subjective testimony was not entirely credible, each of which is fully supported by the

16

record. First, the ALJ noted that, despite Plaintiff's complaints of debilitating pain, he was able to perform certain daily activities, such as caring for his family and a pet, preparing meals, performing household chores, shopping for groceries, driving, taking public transportation, watching television, and reading. AR 25. While it is true that "[o]ne does not need to be 'utterly incapacitated' in order to be disabled," Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)), the extent of Plaintiff's activity here supports the ALJ's finding that Plaintiff's reports of his impairment were not fully credible. See Bray, 554 F.3d at 1227; Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that the claimant's ability to "take care of her personal needs, prepare easy meals, do light housework and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity" (citing Fair, 885 F.2d at 604)). Moreover, as noted above, Plaintiff's statements about his activities undermine his claim that he is unable to function outside of a highly structured environment. JS at 20.

The ALJ also determined that Plaintiff was not fully credible based upon his limited and conservative treatment history. AR 25. The ALJ noted that Plaintiff made "relatively infrequent trips to a doctor for the allegedly disabling physical symptoms." Id. The ALJ observed that Plaintiff's medical appointments were often simply for prescription refills or for symptoms unrelated to the impairments that the ALJ found to be severe. AR 26; see Parra, 481 F.3d at 751 ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." (citation omitted)). Further, although Plaintiff sought treatment for his mental symptoms in 2010, there were no medical records regarding any mental health treatment either before or after 2010. Id. Failure to seek medical treatment is a legitimate basis for an ALJ to discount a claimant's credibility. See

17

1    *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); see also Fair, 885

2    F.2d at 604 (finding that the claimant's allegations of persistent, severe pain

3    and discomfort were belied by "minimal conservative treatment").

4         The ALJ also found Plaintiff to be not fully credible because the

5    "medical records indicate that [Plaintiff] refused to take psychiatric

6    medications, despite having been diagnosed with mood disorder and antisocial

7    personality disorder." AR 26. An ALJ may rely upon a claimant's

8    noncompliance with treatment to provide clear and convincing evidence for an

9    adverse credibility finding. See Orn, 495 F.3d at 638; Fair, 885 F.2d at 603

10   (noting inadequately explained failure to follow prescribed course of treatment

11   can cast doubt on sincerity of claimant's testimony). Furthermore, there is no

12   evidence in the record that Plaintiff's apparent resistance to treatment was a

13   result of his mental impairment. See Molina, 674 F.3d at 1114 (holding that

14   where there was no medical evidence that the claimant's resistance to

15   treatment "was attributable to her mental impairment rather than her own

16   personal preference," the ALJ properly considered the claimant's failure to

17   seek mental health treatment).

18        The ALJ also determined that Plaintiff was not fully credible because he

19   made conflicting statements. For example, Plaintiff reported in his Adult

20   Function Report that he had difficulty sleeping, but he also reported that he

21   spent a lot of time sleeping, taking three to four naps per day, each lasting

22   about an hour and a half. AR 26 (citing AR 225, 246, 247, 251). The ALJ is

23   entitled to consider inconsistent statements when assessing a claimant's

24   credibility. See Molina, 674 F.3d at 1112; Thomas, 278 F.3d at 958-59.

25        The ALJ also relied upon her own observations of Plaintiff in finding

26   that he was not fully credible regarding his symptoms and limitations. The

27   ALJ noted that Plaintiff had a "generally unpersuasive appearance and

28   demeanor while testifying at the hearing." AR 26. The ALJ further noted that

Plaintiff was well-spoken and articulate and did not appear to be in pain or discomfort. <u>Id.</u> Although the ALJ may not "accept or reject the individual's complaints solely on the basis of . . . personal observations," the ALJ was nevertheless entitled to consider her personal observations "in the overall evaluation" of Plaintiff's credibility. SSR 96-7p, 1996 WL 374186, at *8 (July 2, 1996). Where, as here, the ALJ provided several other reasons, aside from her own personal observations, for finding Plaintiff less than fully credible, each of which was supported by substantial evidence in the record.

On appellate review, this Court does not reweigh the hearing evidence regarding Plaintiff's credibility. Rather, this Court is limited to determining whether the ALJ properly identified clear and convincing reasons for discrediting Plaintiff's credibility. <u>Smolen</u>, 80 F.3d at 1284. The written record reflects that the ALJ did just that. It is the responsibility of the ALJ to determine credibility and resolve conflicts or ambiguities in the evidence. <u>Magallanes</u>, 881 F.2d at 750. If the ALJ's findings are supported by substantial evidence, this Court may not engage in second-guessing. <u>See</u> <u>Thomas</u>, 278 F.3d at 959; <u>Fair</u>, 885 F.2d at 604.

**V.**

**CONCLUSION**

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated    May 28, 2014

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge

19